815 So.2d 241 (2002)
STATE of Louisiana DEPARTMENT OF SOCIAL SERVICES in the Interest of I. and P.W.,
v.
C.W.
No. 01-CA-1213.
Court of Appeal of Louisiana, Fifth Circuit.
March 26, 2002.
Rehearing Denied May 22, 2002.
*242 Ted M. Mitchell, Metairie, LA, for Appellant Charles Wagner, Jr.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, Alan D. Alario, II, Assistant District Attorney, Harvey, LA, for Appellees State of Louisiana Department of Social Services and Dianna Fortner.
(Panel composed of Judges EDWARD A. DUFRESNE, JAMES L. CANNELLA and MARION F. EDWARDS).
JAMES L. CANNELLA, Judge.
In this child support enforcement case Defendant, Charles J. Wagner (Wagner), appeals from the Juvenile Court assessment of a 5% fee and the denial of his motion for credit for the support enforcement fees which he has already paid against his outstanding support obligation. For the reasons which follow, we affirm.
This case was transferred from the Twenty-Fourth Judicial District Court to the Jefferson Parish Juvenile Court by the district attorney under La. R.S. 46:236.1. The unresolved issue in the case was a determination regarding the child support amount due. After initial litigation, the case had laid dormant for four years until the child's mother assigned her right to child support to the State through the Department of Social Services, who contracts with the District Attorney's office for assistance in the collection of child support. La. R.S. 46:236.1 et seq, were added by the legislature in 1975 in a cooperative effort with the federal government, following their amendment of the Social Security Act by adding Title IV-D, codified as 42 U.S.C. §§ 651-655, to facilitate the enforcement of child support laws and obligations. Title IV-D required each state to adopt a plan which must be in effect in all political subdivisions of the state. 42 U.S.C. § 654(1). To be in compliance, the state was required to establish a single Title IV-D agency which administered the plan uniformly throughout the state or supervised the administration of the plan by its political subdivisions. 45 C.F.R. § 305.21(a)[1]. Under the plan a state could enter into written cooperative arrangements with local courts and enforcement officials to assist the state IV-D agency in carrying out the child support enforcement program. 42 U.S.C. § 654(7). That is precisely what was done here. The Department of Social Services is the centralized agency for support enforcement. Locally, the district attorney's office handles support enforcement in conjunction *243 with Juvenile Court. La. R.S. 46:236.5 authorizes the collection of a fee for support enforcement payable by the obligor "of not more than five percent of all existing and future support obligations to fund the administrative costs of a system for expedited process." La. R.S. 46:236.11 authorizes a cooperative agreement between the state agency and the courts to collect the support as well as the administrative costs for the expedited processes of support enforcement through a centralized collection process and to disburse the funds collected. Moreover, in this case, Wagner signed a "Payor's Designation" acknowledging the assessment of the 5% fee and agreeing that it would paid with and deducted from his support payment.
On appeal, Wagner argues that the 5% fee assessed against him and collected by the Department of Social Services is in violation of federal law. He relies on 45 C.F.R. § 302.51(a) in support of his argument. That regulation provides in pertinent part:
For purposes of distribution in a IV-D case, amounts collected, ... shall be treated first as payment on the required support obligation for the month in which the support was collected and if any amounts are collected which are in excess of such amount, these excess amounts shall be treated as amounts which represents payment on the required support obligation for previous months.
Based on this provision, Wagner argues that deduction of 5% from his support payment to pay fees or costs violates federal law because this 5% should first go to any monthly support owed and then be credited to arrearages. In other words, he argues that no fees can be collected until all owed support is paid. We disagree.
Wagner's argument is based on a misunderstanding of the system. 42 U.S.C. § 654(7) authorizes cooperative agreements "including the entering into of financial arrangements with such courts and officials in order to assure optimum results under the program." Similarly, La. R.S. 46:236.11 authorizes cooperative agreements between the state and the courts to collect the administrative costs of expedited process through the state centralized collection unit. A fee of up to 5% is authorized by statute "to fund the administrative costs of a system for expedited process." La. R.S. 46:236.5(B). The fee is not part of the support payment. The fee is in addition to the support obligation which is simply collected by the state in a central location as a matter of convenience and then forwarded to the appropriate court. The obligor could be required to pay the support and the fees in two separate payments or even at two separate locations. But, as a matter of convenience, the legislature has authorized collection and disbursement from a central unit. Furthermore, Wagner has twice signed the "Payor Designation," without objection, agreeing to this central collection and disbursement. We find nothing in this system that violates federal law. This process of collecting the fee along with the support payment and the correlative disbursement of the funds is authorized by both federal and state law.
Wagner also argues that the 5% fee is being assessed and collected in violation of state law. The provision authorizing the fee, La. R.S. 46:236.5(B)(1), provides in pertinent part:
Such a court may collect and distribute support obligations and may, by court order or rule, assess and collect a sum payable by the obligor as a fee of not more than five percent of all existing and future support obligations to fund *244 the administrative costs of a system for expedited process.
The essence of Wagner's argument on this point is that the fee collected is well in excess of that needed to fund the specific purpose that gave rise to the authority to collect the fee, that is, "the administrative costs of a system for expedited process." He argues that the "expedited process" consists of two hearing officers and their staff and that funding for these positions does not amount to the approximate one million dollars that he contends is collected in fees. He also argues that the fee is being commingled with other funds of the Juvenile Court and that there has been no accounting of where the funds collected as support enforcement fees have gone. Thus, the collection of the 5% fee is in violation of La. R.S. 46:236.5.
The State points out the obvious that "the administrative costs of a system for expedited process" is not limited to the two hearing officers and their staff. As defined in La. R.S. 46:236.5 "expedited process means administrative or expedited judicial processes or both which increase effectiveness and meet completion time frames specified in Paragraphs (1) and (2) of Subsection A of this Section."[2] The goal of the system is to effectively establish and enforce child support orders within strict statutory time frames. In addition to hearing officers and their staff, the expedited support enforcement process also requires additional clerks, administrative employees, equipment, office space and mailing costs as well as other expenses.
Further, Wagner was completely lacking in proof to support the assertions which he made. He only called the hearing officer as a witness to ask him his salary and how many people he employed. This was far short of the proof necessary to support his allegation that the 5% fees are not used exclusively for the administrative costs of the expedited process of support enforcement. The trial judge noted "you have presented absolutely no evidence to support your bold allegations." Further the trial court noted that "these fees are subject to audit, as is the entire budget of this Court. To my knowledge, this Court has never failed an audit. And there has never been any other Court saying that the method by which the Court collects the 5% (five percent) is improper." Based on the foregoing, we find nothing upon which to hold that there is anything improper about the assessment of the 5% fee on Wagner's support obligation. We find the assessment of the 5% fee to be completely within the statutory authorization set out in La. R.S. 46:236.5(B)(1).
Finally, Wagner requests that, if we find his proof lacking, then we consider reopening the case and allowing him to conduct discovery and present his evidence in a new hearing. Wagner requested a continuance in the Juvenile Court which was denied. The Juvenile Court gave Wagner the option of withdrawing his motion until he was better prepared and he declined. Instead he chose to go forward with little or no evidence to support his allegations. Wagner was aware of the 5% fee as early as April 20, 2001 when he signed the "Payor's Designation." He did not raise the fees as an issue until August 10, 2001. The matter was set for hearing for August 27, 2001, but he filed no discovery or subpoena requests in connection with the hearing. Thus, we find that Wagner had ample time to prepare his case and he has presented no basis for reopening *245 the matter to give him additional time or a new hearing.
Accordingly, for the reasons stated above, we affirm the trial court ruling that the assessment of a 5% fee on Wagner's support obligation is not in violation of law, either state or federal, and denying his motion for credit against his support obligation for the fees he has already paid. Further, we decline his request to re-open the case and remand it so that he can seek discovery and conduct a new hearing on his motion. The judgment of the Juvenile Court is affirmed. Costs of appeal are assessed against Wagner.
AFFIRMED.
NOTES
[1] Now see 45 C.F.R. § 302.10 and § 302.12.
[2] Subsection A requires that 75% of the support enforcement cases must be brought to disposition within six months from the time of service and 90% of the cases must be brought to disposition within twelve months. La. R.S. 46:236.5(A)(1) and (2).